**JAN EDWARD RONIS**
California Bar No. 51450
105 West F Street, 3rd Floor
San Diego, California 92101
Telephone: (619) 236-8344
Facsimile: (619) 639-8860
jan@ronisandronis.com

Attorney for William Sanchez Garcia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE GONZALO P. CURIEL**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 21-cr-00292-GPC-2 |
| Plaintiff, | DATE: May 2, 2023<br>TIME: 9:00 a.m. |
| v. | |
| WILLIAM SANCHEZ GARCIA, | DEFENDANT'S SENTENCING MEMORANDUM |
| Defendant. | |

TO: RANDY S. GROSSMAN, UNITED STATES ATTORNEY;
ALLISON B. MURRAY, ASSISTANT UNITED STATES ATTORNEY.

Defendant, William Salvador Sanchez Garcia ("Mr. Sanchez Garcia"), by and through his counsel, Jan Edward Ronis, hereby files the following Sentencing Memorandum.

# I.

# INTRODUCTION

Mr. Sanchez Garcia is respectfully requesting a sentence of 60 months custody to be followed by 5 years of supervised release. Mr. Sanchez Garcia maintains that in examining his particular circumstances and the non-violent offense he committed, the recommended sentence of 60 months custody is sufficient, but not greater than necessary to achieve all the goals of sentencing. Mr. William Sanchez Garcia is a thirty year old man born in Colima, Mexico in July 1991 who got on a boat laden with cocaine. He pled guilty to Count 2 Possession of Cocaine with Intent to Distribute on Board a Vessel and aiding and

abetting on February 26, 2021 in violation of 46 USC Section 7054 and 18 USC Section 2.

Mr. Sanchez Garcia lived primarily with his mother in Colima, Mexico after his parents' separation when he was 6 years old, although his father was involved in his life. He has a younger brother and an older sister who reside and work in Mexico. 7 PSR 34-36. Mr. Sanchez Garcia has a young son of 11 years who is a student in Colima. He also has a significant other who likewise resides in Colima and works for the Port. 8 PSR 37-38. He graduated from high school in Mexico and completed one year of vocational training in heavy machinery (8 PSR 44), however at the time of his arrest in the instant case, Mr. Sanchez Garcia was working as fisherman and boat mechanic in San Blas, Nayarit, Mexico. 8 PSR 46.

## II.
## SENTENCING FACTORS CONSIDERED

### A.     Current Law

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 224-25, 259-60 (2005); *United States v. Hantzis*, 625 F.3d 575, 582 (9th Cir. 2010). Accordingly, this Court is authorized to impose a sentence below the Guidelines range. *Booker*, 543 U.S. at 245. The Supreme Court and Ninth Circuit have established a framework for approaching the sentencing process post-*Booker*. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 551 U.S. 1113 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Under this framework, the sentencing court must consider all of the factors listed in 18 U.S.C. § 3553(a) when imposing sentence. *Id*.

The overarching statutory charge under 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Those purposes are the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

1         - to afford adequate deterrence;

2         - to protect the public from future crimes of the defendant; and

3         - to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment.

All sentencing proceedings are to begin by determining the applicable Guidelines range. *Carty*, 520 F.3d at 991. The Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process. *Id*. Furthermore, the parties must be given a chance to argue for a sentence they believe is appropriate. *Id*.

The sentencing court must then consider the factors outlined in 18 U.S.C. § 3553(a) to determine if they support the sentence suggested by the parties, specifically:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guidelines range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

When considering these factors and determining the appropriate sentence, the sentencing court may not presume that the Guidelines range is reasonable, nor should the Guidelines factor be given more or less weight than any other. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Carty*, 520 F.3d at 991.

This court is "empowered to disagree with the Guidelines, when the circumstances in an individual case warrant." *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010). Although "[n]o judge is *required* to sentence at a variance with a Guideline" . . . "every judge is at liberty to do so." *Id*. at 1030 (citing *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). Under these principles, the court is at liberty to tailor a sentence to the individual defendant. *United States v. Chavez*, 611 F.3d 1006 (9th Cir.

2010) (citing *Kimbrough*, 552 U.S. at 101). Given the application and balancing of the factors in 18 U.S.C. § 3553(a), the sentencing process necessarily involves an exercise in judgment, not a mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Indeed, rigid mathematical formulas for reviewing outside-guidelines sentences are barred. *Gall*, 552 U.S. at 47.

Furthermore, one of the goals of sentencing remains rehabilitation. *United States v. Moreland*, 568 F. Supp. 2d 674, 687 (S.D. W. Va. 2008). This goal cannot be served if a defendant has nothing to look forward to beyond imprisonment. *Id*. Accordingly, a judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *Id*. (citing *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)). Instead, the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).

**B.       Applicable Sentencing Guidelines**

Mr. Sanchez Garcia maintains the following Sentencing Guidelines are applicable and appropriately applied in this case:

| | |
|---|---|
| Base Offense Level [U.S.S.G. §§ 2D1.1(c)(1)] | 38 |
| Safety Valve [U.S.S.G. §§ 2D1.1(b)(18), 5C1.2] | -2 |
| Acceptance of Responsibility [U.S.S.G. § 3E1.1(b)] | -3 |
| Combination of Factors [U.S.S.G. § 5K2.0] | <u>-2</u> |
| Total Adjusted Offense Level | 31 |

Mr. Sanchez Garcia has zero criminal history points. He is in a Criminal History Category I. The Sentencing Guideline range for an adjusted offense level of 31, and a Criminal History Category I, is 108-135 months custody. Mr. Sanchez Garcia believes a variance from the Sentencing Guidelines is appropriate and is requesting a 60 month custodial sentence with 5 years of supervision to follow consistent with Probation's recommendation.

### 1. The Court Should Award a Reduction for Safety Valve

There is a dispute between the parties as to whether safety valve should be awarded in this case. The government maintains that while safety valve is otherwise applicable for Mr. Sanchez Garcia, he has not provided truthful information. The government's disbelief of Mr. Sanchez Garcia's information appears to be rooted in Mr. Sanchez Garcia's claim that there was an element of coercion used to induce Mr. Sanchez Garcia's participation in the smuggling venture. Mr. Sanchez Garcia at all times has accepted responsibility for his commission of the offense and has never wavered in his admission of involvement. 6 PSR 23-24.

Mr. Sanchez Garcia subjected himself to questioning at a safety valve meeting by the previously assigned United States Attorney, and two special agents (one from the Department of Homeland Security (HSI), and one from the Drug Enforcement Administration (DEA)). Mr. Sanchez Garcia also subjected himself to questioning by the United States Probation Officer assigned to his case. Mr. Sanchez Garcia provided the same information to Probation that he previously provided to the government during his safety valve meeting, including his claim that there was **an element** of coercion that induced his participation in the offense. 5 PSR 13-16. Importantly, while the government has denied a recommendation for safety valve, Probation found Mr. Sanchez Garcia to be credible and truthful. In fact, Probation noted that Mr. Sanchez Garcia "is extremely remorseful for his participation in the offense[, and] . . . [o]verall, it is believed a variant sentence would be appropriate." 11 PSR 66-71.

The government is entitled to be skeptical, and Mr. Sanchez Garcia does not fault them, however, cartels and drug traffickers routinely kidnap, torture, decapitate, hang, burn, and mutilate persons. They also employ the use or threatened use of force to induce participation in a smuggling venture. Mr. Sanchez Garcia should not be denied safety valve simply because the government questions whether there existed an element of coercion that induced Mr. Sanchez Garcia's participation in the offense. Absent credible

evidence which demonstrates Mr. Sanchez Garcia was untruthful in his claim, this Court should award Mr. Sanchez Garcia a reduction for safety valve as he has proven beyond a preponderance of evidence that his statement is truthful.

### C. Applicable Factors Pursuant to 18 U.S.C. § 3553(a)

It must be noted at the outset, Probation believes that a variance from the otherwise applicable Sentencing Guidelines is appropriate in the instant case. 11 PSR 66. Probation in the PSR stated, "the undersigned believes that a variance would be appropriate". 11 PSR66. Probation recommended an 84 month sentence be imposed. 11 PSR 71. This reflected a 50% discount from the low-end of the Sentencing Guidelines of 168 months as they were calculated by Probation.

#### 1. Nature and Circumstances of the Offense

The plea agreement, the PSR, and the above information concerning the offense all provide sufficient information for the Court to consider when evaluating the nature and circumstances of the offense. However, Mr. Sanchez Garcia would like to highlight several factors for the Court to consider.

##### a. The Offense was Non-violent

"If the defendant is a non-violent first offender [], the Court should consider imposing a sentence other than a sentence of imprisonment." *See* United States Sentencing Guidelines § 5C1.1, Commentary: Application Notes: 4. (2021). "A 'non-violent first offender' is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction." *Id*. Although the offense is serious, Mr. Sanchez Garcia is a "non-violent" offender. The offense did not involve violence, weapons, threats, injuries, loss of property, or any identifiable victims. Thus, as a non-violent offender, the requested sentence is sufficient, but not greater than necessary.

### b. Genuine Remorse for Engaging in the Offense

Mr. Sanchez Garcia is very remorseful and regrets his involvement in the offense. 5 PSR 16. He knows what he did was wrong. He has expressed remorse to both Probation and his family. According to Probation, his remorse is sincere. 6 PSR 23-24.

### 2. History and Characteristics of the Defendant

The PSR accurately reflects Mr. Sanchez Garcia's history and characteristics. Under 18 U.S.C. § 3553(a), this Court should consider Mr. Sanchez Garcia's personal history when determining the appropriate sentence for his offense. *Booker* gives district courts the discretion to weigh a multitude of mitigating factors such as age, education, and family ties and responsibilities. *United States v. Burgum*, 633 F.3d 810 (9th Cir. 2011). As noted by Probation, Mr. Sanchez Garcia has no criminal convictions, a solid employment record, and no history of substance abuse. *See* PSR at 13. Mr. Sanchez Garcia believes, consistent with Probation, this background supports a variance. 11 PSR 66.

### 3. Need to Provide Just Punishment and Respect for the Law

#### a. Incarceration has a Greater Significance for First-time Offenders

Mr. Sanchez Garcia has never spent time incarcerated prior to the instant offense. Probation noted in the PSR this is Mr. Sanchez Garcia's first criminal conviction. 7 PSR 27-31. Probation agreed this is Mr. Sanchez Garcia's first criminal conviction and any custodial term will likely have a great impact on him. Given Mr. Sanchez Garcia's inexperience with the criminal justice system he is likely to be more susceptible to abuse while in custody than other repeat offenders who are familiar with the circumstances of imprisonment. *See United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend); *see also United States v. Baker*, 445 F.3d

987, 990 (7th Cir. 2006) (first experience with prison would mean more to defendant and have greater impact than to a defendant who had prior convictions). Accordingly, for a first time offender who engaged in a non-violent offense, severe imprisonment should be avoided and is otherwise not necessary to achieve respect for the law, or to ensure the desired deterrent effect required.

### b. The Significant Collateral Consequence of Conviction

The collateral consequences of a felony conviction cannot be understated. Mr. Sanchez Garcia is not a United States citizen. As a result of Mr. Sanchez Garcia's conviction he will be deported back to Mexico upon the completion of any sentence imposed by the Court. Regardless of the sentence imposed, his conviction renders him ineligible for relief from removal or deportation. Thus, Mr. Sanchez Garcia will be exiled from the United States at the conclusion of this case. The loss of his right to work in, or even visit, the United States is a life-long collateral consequence of his conviction. The deportation he faces is a "life sentence of banishment [from the United States] in addition to the punishment which a citizen would suffer from identical acts." *Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J.). If Mr. Sanchez Garcia were a citizen, any sentence that this Court imposes will have a definite beginning and end. However, long after his sentence is completed Mr. Sanchez Garcia will suffer the consequences of his mistake. The collateral consequence of life-time banishment from the United States is a "drastic" penalty that will irreversibly impact Mr. Sanchez Garcia's life. *Id*. This is only compounded by the danger he faces upon deportation from the individuals who hired him. Mr. Sanchez Garcia respectfully requests that this Court take into account the above collateral consequence of his conviction when considering an appropriate sentence.

//
//
//

### c. Sixty Months (60) is Reasonable to Avoid Sentencing Disparities

When considering Mr. Sanchez Garcia's request for a 60 month custodial sentence, this Court should also consider a district court's sentence must be determined in light of the factors set forth in 18 U.S.C. § 3553(a) which specifically include the "need to avoid unwarranted sentencing disparities." *See* 18 U.S.C. 3553(a)(6) (2019); *see also* 28 U.S.C. Section 991(b)(1)(B); U.S.S.G. Ch.1, PtA, ("Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). In *United States v. Daas*, 198 F.3d 1167 (9th Cir. 1999), the Ninth Circuit noted that a central goal of the Sentencing Guidelines is to eliminate sentencing disparity. *Daas citing Koon v. United States*, 518 U.S. 81 (1996). The Ninth Circuit has repeatedly held that it is appropriate for district courts to take into account sentencing disparities when imposing sentence. *See United States v. Tzoc-Sierra*, 387 F.3d 978 (9th Cir 2004) (in drug case the Ninth Circuit affirmed district court's downward departure from 46-57 months to 36 months on basis of disparity of sentences received by co-defendants).

In the instant case there were three panga (Go Fast Vessel "GFV") involved in the offense. Two boats departed from Colombia with cocaine, and the third boat which Mr. Sanchez Garcia was on departed from Mexico. The Mexican boat was to rendevous with the other two boats for the cocaine to be loaded and then brought back to Mexico. All of the defendants plead guilty to the same offense. "Per the AUSA, [] it is the government's understanding that all the defendants took turns driving the GFV[,]" and thus, no difference in the role among the ten defendants involved in the case. *See* PSR at 5. Five of the ten defendants have been sentenced by the Court. The sentences imposed to date have ranged from 54 months custody to 56 months custody. *See* Docket generally. Therefore, to avoid unwarranted sentencing disparities, Mr. Sanchez Garcia's requested sentence of 60 months custody is reasonable and appropriate.

**4.     The Proposed Sentence will Promote Deterrence**

      **a.  Specific Deterrence has Been Achieved**

Here, there can be no question the requested sentence is sufficient to specifically deter Mr. Sanchez Garcia from engaging in any future criminal conduct. Mr. Sanchez Garcia has realized the consequences of his actions, and has vowed to never choose the same path again. The time already incarcerated and the threat of further incarceration have both been significant deterrents experienced by Mr. Sanchez Garcia. Thus, further severe incarceration is not necessary to promote specific deterrence.

### b. A Severe Sentence to Promote General Deterrence Must be Weighed Against Individualizing the Sentence

Few legal principles are either as ancient or deeply etched in the public mind as the notion that punishment should fit the crime. *See United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The familiar maxim, however, is only half-true. "[I]n the present century the pendulum has been swinging away from ... the philosophy that the punishment should fit the crime and toward on that the punishment should [also] fit the criminal." W. LaFave & A. Scott, Handbook on Criminal Law § 5 at 25 (1972). The concept of the notion of individualized sentencing is firmly entrenched in our present jurisprudence. As the Supreme Court observed, "[p]unishment should fit the offender and not merely the crime. *Williams v. New York*, 337 U.S. 241, 247 (1949).

While general deterrence is a legitimate consideration in passing sentence and must be considered by the Court under 3553(a), it is subject to limitation. "Tailoring punishment to the individual criminal may reduce the efficacy of [general] deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment." *Barker*, 771 F.2d at 1368. "[G]eneral deterrence for the benefit of society is served when a person is convicted of a serious crime, thus deterring others from making the same mistake." *United States v. Onuoha*, 820 F.3d 1049, 1057 (9th Cir. 2016).

In the instant case when weighing the need to impose a severe custodial sentence to promote general deterrence against the need to individualize the sentence to Mr. Sanchez Garcia, respectfully, Mr. Sanchez Garcia maintains general deterrence is satisfied with

the requested sentence, and the recommended sentence is the appropriate individualized sentence. A judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)). Here, Mr. Sanchez Garcia understands he must be punished, but also believes the requested sentence is sufficient, but not greater than necessary to do so in his case.

### 5. The Public will be Protected from Future Crimes by Mr. Sanchez Garcia

Mr. Sanchez Garcia will be deported upon the conclusion of his custodial sentence. Mr. Sanchez Garcia maintains that more appropriate than imposing a severe custodial sentence, consistent with 28 U.S.C. § 994(k), the Court, to the extent possible, should afford Mr. Sanchez Garcia the opportunity to rehabilitate himself, and maintain gainful employment and attend vocational training. *See* 28 U.S.C. § 994(k) (2009) ("The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant with needed educational or vocational training, medical care, or other correctional treatment").

Furthermore, as a first-time offender, Mr. Sanchez Garcia presents a low risk of recidivism. *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008). Recidivism rates of first-offenders are significantly lower than those for other defendants in higher criminal history categories. *See* Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders"). In a case such as Mr. Sanchez Garcia's where he has no experience with incarceration prior to the instant offense, severe incarceration is not appropriate. Mr. Sanchez Garcia's background simply presents a reduced likelihood of recidivism. *See A Comparison of the Federal Sentencing Guidelines Criminal History*

*Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan. 4, 2005). Education and employment are more effective ways to protect the public and prevent recidivism. Therefore, Mr. Sanchez Garcia urges the Court to impose a 60 month custodial sentence.

## III.
## SENTENCING RECOMMENDATION

Based on the foregoing facts and law Mr. Sanchez Garcia respectfully requests this Court impose a 60 month custodial sentence to be followed by 5 years of supervision.

Respectfully Submitted,
*/s Jan Edward Ronis*

DATED: April 25, 2023

**JAN EDWARD RONIS**
Attorney for Mr. Sanchez Garcia